Allen Leroy HAGENKORD, Plaintiff in error-
Petitioner,

v.

STATE of Wisconsin, Defendant in error.†

Supreme Court

*No. 79–808–CR. Argued October 28, 1980.—Decided March 3, 1981.*

(Also reported in 302 N.W.2d 421.)

† Motion for reconsideration denied, without costs, on April 13,
1981.

For the petitioner the cause was argued by *Bryan Borman,* assistant state public defender, with whom on the briefs was *David Niblack,* state public defender.

For the defendant in error the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. This is a review of a decision of the Court of Appeals[1] affirming the judgment of the Circuit Court for Milwaukee County, Robert W. Landry, Circuit Judge, and affirming one postconviction order and reversing another.

The defendant, Allen Leroy Hagenkord, was found guilty of first-degree sexual assault, in violation of sec. 940.225(1)(a), Stats., and of injury by conduct regardless of life, in violation of sec. 940.23. Following the jury's verdict of guilty, Hagenkord was sentenced to a seven-year sentence on the charge of first-degree sexual assault and to a three-year consecutive sentence on the charge of injury by conduct regardless of life.

Two motions for postconviction relief were brought before the Circuit Court. The first of these motions asserted that there was a denial of the right of confronta-

[1] 94 Wis.2d 250, 287 N.W.2d 834 (Ct. App. 1979).

tion because hospital records were introduced without calling as witnesses the doctors whose observations were recorded. This motion was denied by the Circuit Court on the ground that there was no substantial issue as to the truth of the statements recorded in the hospital records. The Court of Appeals reversed this order and remanded for the purpose of further proceedings on the issue of confrontation. We find this order of the Court of Appeals erroneous and reverse.

The second motion brought in the Circuit Court was founded on the claim that conviction for injury by conduct regardless of life was a lesser-included offense within first-degree sexual assault and therefore could not properly be the basis for a separate conviction and sentence. The Circuit Court denied this motion on the ground that conduct evincing a depraved mind was an element of injury by conduct regardless of life but not an element of first-degree sexual assault. It therefore concluded that they were separate crimes, that one was not included in the other, and that separate convictions and sentences were appropriate. The Court of Appeals affirmed this order, and we affirm the Court of Appeals in that respect.

On the appeal to the Court of Appeals, it was determined that the evidence was sufficient to establish that Hagenkord had committed the crime of first-degree sexual assault. Basic to that determination was the affirmance of the finding that sexual intercourse had in fact occurred. The sufficiency of the evidence in respect to whether Hagenkord caused great bodily harm in violation of sec. 940.23, Stats., was not disputed on the appeal and is not an issue on this review. It is therefore apparent that the conviction under sec. 940.23 must be affirmed unless it constituted a lesser-included offense of sec. 940.225 (1) (a).

The facts adduced at trial, not disputed on this review, show that Hagenkord had been a friend of the deceased

husband of the victim. He met her in a neighborhood tavern and asked her to take him home. While they were in the automobile, he struck her repeatedly on the head and face; and after pulling her into the rear seat of the vehicle, choked her. She lost consciousness, and when she regained consciousness several hours later, near dawn on the morning of July 7, 1976, she was nude except for a pair of anklets and was bleeding profusely from her injuries. A passing traffic patrol officer of the Milwaukee Police Department noticed her parked car, came to her assistance, and called a police ambulance to take her to the Milwaukee County General Hospital.

A crime laboratory investigation showed that the interior of the vehicle was blood-stained and a tire iron found in the vehicle was stained with blood of the same type as the victim's. Human hair adhering to the tire iron had characteristics consistent with samples of the victim's hair. The severity of the victim's injuries was undisputed; and even at the time of the trial, she suffered from visual impairment as a result of the assault.

In his Court of Appeals brief, the defendant Hagenkord made the following statement, which the Court of Appeals appropriately accepted as establishing the sufficiency of the evidence to convict the defendant of injury regardless of life, in violation of sec. 940.23, Stats. In the Court of Appeals brief, the following appears:

"In the instant case the complaint and proof show that [the victim] gave a ride home to the defendant who had been a friend of her deceased husband, that during that ride home the defendant, without provocation, repeatedly beat [the victim] with a tire iron about her face and head, dragged her into the back seat of her car, continued beating her and choked her until she passed out, and then had sexual intercourse with her without her consent. As a result of the assault she lost considerable blood, spent over a week in the hospital, suffered fractures of bones in her face, and suffered what was at the least a pro-

tracted impairment of her left eye. This conduct constituted a violation of sec. 940.225 (1) (a), Stats., and of sec. 940.23, stats."

The same concession is made by the defendant in his brief on review in this court. It should be noted that in the concession the defendant recites, "This conduct constituted a violation of sec. 940.225 (1) (a), Stats., and of sec. 940.23, stats." If this concession, which is made without any qualification whatsoever in the briefs, were to be taken at face value, all issues, except for the question relating to a lesser-included offense, would be decided summarily against the defendant. We believe that, with judicial propriety, we could accept that concession at its face value. At oral argument, however, counsel for the defendant asserts that no concession was intended in respect to proof of sexual intercourse, that the intent of the defendant in making the concession was only in respect to facts other than those tending to show sexual intercourse took place. On the basis of the direct language and the unequivocal nature of the concession, we accept the defendant's present interpretation of the nature of the concession with great difficulty. Nevertheless, for the purposes of this appeal, we accept the concession in the briefs only for the purposes now acknowledged by the defendant. We therefore accept the concession in respect to all facts except for that portion which acknowledged that the defendant had sexual intercourse with the victim.

As so viewed, three questions are presented for our resolution: First, was the evidence sufficient to show that Hagenkord had sexual intercourse with the victim after he beat her, choked her, and while she was unconscious. We conclude that the Court of Appeals' affirmance of the trial court finding that sexual intercourse took place was correct and that the hospital records sub-

mitted by the state constituted evidence to support that element of the crime beyond a reasonable doubt.

Related to the question of the sufficiency of the evidence is the second question, whether the confrontation clause of the United States Constitution was violated when the proof of intercourse was put into evidence by use of hospital records under circumstances where the maker of the records did not appear in court and was not cross-examined. The Court of Appeals did not decide this question, because it concluded that the defendant at trial had not made an objection with sufficient specificity to raise the confrontation question. It therefore remanded that portion of the case to the trial court to afford the defendant the opportunity to present testimony with respect to the alleged denial of confrontation. We conclude that that remand was in error, that adequate objection was made, and that Hagenkord's constitutional right to confront witnesses was not denied.

The third question is whether injury by conduct regardless of life, sec. 940.23, Stats., is a lesser-included offense of first-degree sexual assault causing great bodily harm, sec. 940.225(1)(a). We conclude that it is not and affirm the Court of Appeals' decision in that respect and hold that they are separate offenses and conviction and sentence was appropriate on each charge.

Ordinarily, it is not the role of this court to review the Court of Appeals' decision affirming or reversing a trial court's finding on an evidentiary matter. Basic to the court reorganization of 1977 is the philosophy that Court of Appeals' decisions on questions of evidence usually be final. Here, however, the fact-finding is inextricably interwoven with the legal problems which arise from the nature of the state's proof. The victim was unable to give direct testimony that Hagenkord had sexual intercourse with her. She testified that she was beaten, severely injured, and lost consciousness. Upon

regaining consciousness several hours later, she was nude except for ankle socks. These facts are uncontested; and, in accordance with the concession of the defendant, are sufficient to prove beyond a reasonable doubt that Hagenkord is guilty of causing great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind regardless of human life, in violation of sec. 940.23, Stats. Clearly, that conviction must be affirmed.

That evidence, while sufficient also to show that Hagenkord caused great bodily harm to the victim consonant with requirements of sec. 940.225 (1) (a), Stats., first-degree sexual assault, does not in itself furnish proof that he had sexual intercourse with the victim. There is no reasonable doubt, however, under the undisputed circumstantial evidence of this case that, if sexual intercourse occurred, Hagenkord committed the assault and, because the victim was unconscious, intercourse was without consent, as defined in sec. 940.225 (4) (c), Stats.

Additionally, the victim testified she had not had sexual intercourse with anyone after her husband died in an industrial accident six months earlier.

The element of the crime not proved by the circumstantial evidence outlined above was the fact of intercourse itself. This the state proved by submitting hospital records comprised of some 50 pages relating to the victim's examination and care during the time she was a patient at the Milwaukee County General Hospital. These hospital records were corroborative of the great bodily harm inflicted on the victim by Hagenkord, which harm and injuries have been conceded. The hospital records stated a pool of grayish liquid was found in the posterior of the victim's vagina and laboratory reports indicated that this pool of grayish liquid contained spermatozoa. They also stated there were excoriations, abrasions, and contusions in the vaginal and pubic areas.

There is no question of admissibility of these hospital records under the Wisconsin Rules of Evidence. Even when a doctor or other declarant who furnishes such medical or hospital services is actually available and does not testify as to his entries and although no record custodian appears to vouch for the regularity of the records, hospital records are not excluded as hearsay. They are specifically excepted from the rule against admission of hearsay, provided that a copy certified by the record custodian is filed with the court ten days prior to trial and a notice of the filing is given to all parties. Secs. 908.03(6m)(a) and 910.03, Stats. Hospital records so introduced in compliance with sec. 908.03(6m)(a) are self-authenticating by operation of sec. 909.02(11). The defendant acknowledged that these procedural requirements were fully complied with. Thus, on an evidentiary basis, as distinguished from constitutional grounds, the records were properly received and constituted sufficient proof that intercourse took place at the time charged by the state. This fact, coupled with other direct and circumstantial evidence, is sufficient to prove beyond a reasonable doubt that Hagenkord had sexual intercourse with the victim and caused her great bodily harm.

The defendant contends on this review, although acknowledging the evidentiary sufficiency of the records themselves, that they were never placed before the jury and, accordingly, there was a denial of due process because of the lack of any evidence from which the jury could find that intercourse took place.

The record indicates that the medical records were voluminous. A large portion of the records consisted of handwritten notations, which the prosecutor acknowledged were at best "semi-legible." He proposed to the court, after their receipt into evidence, that the records not be submitted to the jury in their documentary form because, the prosecutor asserted, 90 percent was in medi-

cal terms, which would cause the jury to speculate as to the meaning of the terms. Accordingly, the prosecution called William Boyd, a senior medical student at the Medical College of Wisconsin. He was placed under oath and was asked by the prosecutor to interpret some of the words and the meaning of some of the entries in the medical records. Boyd was permitted, without objection, to explain the medical terms which described the head injuries sustained by the victim and the injury to her eyes. He also interpreted the findings of the pelvic examination made of the victim the day after the assault. He pointed out that that examination showed excoriations or scabs on the right thigh near the vulva and abrasions in the genital area. He also noted that three contusions were revealed by the examination and that they were near the entrance to the vagina. He also stated that the report showed that a pool of grayish liquid was located in the posterior of the vagina and that slides revealed that sperm heads were present in the liquid. He stated that spermatozoa are the male reproductive cells.

Defense counsel did not cross-examine the medical student. Although this portion of the evidence came in without objection, the defense on this review asserts that no evidence was placed before the jury in respect to the sperm findings because the medical records, although admitted into evidence, were never actually given to the jury. Additionally, he asserts that, at the time the medical student testified, the state had closed its case and that, therefore, whatever might otherwise have been the propriety of the interpretative comments by the medical student, they could not be evidence when made after the state closed its case.

The assertion—that the state had rested—is factually incorrect. The record shows that, prior to placing the medical student under oath, the prosecutor stated:

". . . the State is virtually ready to rest with the exception of one item that was discussed outside the presence of the Jury."

Perhaps counsel for the defendant construed the term, "virtually," incorrectly. "Virtually," as so used, according to Webster's Third New International Dictionary, means "almost entirely." It is apparent, therefore, that the state's case was not closed; and, moreover, the prosecutor stated that he had one other item to dispose of before the state rested. The record shows that the testimony of the medical student came in as a part of the state's case.

The Court of Appeals, in referring to the testimony of the medical interpreter, said:

"We construe his expertise arising from his senior medical student status as no more than a medical lexicographer and of no substantive evidentiary significance in the trial." (P. 256)

The defendant on this review has seized upon the latter phrase used by the Court of Appeals and argues that the medical student's explanations were held not to be evidence and, therefore, because the records themselves were not given to the jury, no evidence of sexual intercourse was placed before the finders of the fact.

While it is clear that the medical student's testimony is an interpretation of the medical phrases in the hospital records, the records were themselves in evidence. Boyd was merely serving the function of a translator of medical language. We do not see his position as being different than that of a foreign-language expert who, under oath, translates the meaning of a document originally written in a language not understandable by the jury. *See* sec. 906.04, Stats. The purpose of Boyd's testimony, that of an expert translator of medical terms into layman's English, was not challenged by the defense.

Testimony by experts is not limited to giving opinions or to the stating of facts derived from specialized knowledge. Sec. 907.02, Stats., provides in part that:

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■

That provision of the Rules of Evidence provides that such experts may testify not only to help the trier of fact determine a fact in issue but also to "assist the trier of fact to understand the evidence." The function of the medical student was that of an expert medical lexicographer to assist the jury in the understanding of the hospital records which were admitted into evidence. The Court of Appeals correctly stated that his testimony was not substantive evidence. It was but explanatory of the evidence already in the record. Such testimony was appropriate under the Wisconsin Rules of Evidence. The testimony was probative, relevant, and admissible as being explanatory of what was contained in the primary evidence, the hospital records. It has never been contended that such explanation did not accurately explain and summarize the contents of those portions of the medical records that were relevant to the issue of whether there was evidence that sexual intercourse had occurred.

The defendant on this review also appears to argue that it was reversible error for the hospital records not to be given to the jury. The record shows that the prosecutor, in the presence of defense counsel and the court, stated that he did not intend to send the records to the jury because he felt they would be unintelligible. At no time did defense counsel object to the withholding of the records from the jury or ask that they be submitted.

It is clear that a trial court has discretion whether to send evidence to the jury. *Gibson v. State,* 55 Wis.2d 110, 197 N.W.2d 813 (1972). Holz, in his article, *A Survey of Rules Governing Medical Proof in Wisconsin— 1970,* 1970 Wisconsin Law Rev. 989, citing Wisconsin cases, states:

"Whether the hospital reports, if admitted, should be allowed in the jury room rests within the discretion of the court." (P. 1027)

We approve of that statement as being declarative of the law in respect to the submission of hospital records to the jury. Accordingly, the only question is whether the trial court abused its discretion in not directing that the records be physically submitted to the jury.

While the trial court did not expressly articulate a rationale for the records not being given to the jury, it acquiesced in the explanation of the prosecutor that the records were lengthy, technical, and confusing to the jury because of the use of medical terms. The trial record indicates, even absent an express ruling or an articulation of reasons by the trial court, that it was these considerations posed by the prosecutor and not disputed by defense counsel that governed the trial court's determination not to send the records to the jury. It was not an abuse of discretion to fail to do so.

Defense counsel has made no objection on the ground that the method by which the contents of the records went before the jury failed to state with completeness the relevant facts; nor is there any contention that the medical records, when viewed as a whole, would in any sense contradict or qualify the evidence recounted by the medical student relevant to sexual intercourse—the vaginal injuries and the presence of semen. On the basis of our

independent review of the evidence before the jury, we conclude that the Court of Appeals correctly sustained the finding that the evidence showing sexual intercourse was sufficient to prove that element beyond a reasonable doubt. We also affirm the determination that the procedures in submitting such evidence were appropriate under the circumstances and were consistent with the Wisconsin Rules of Evidence.

Although the statement of defendant's counsel in argument to the jury cannot be considered as evidence, nevertheless he told the jury:

"Somebody forceably had sexual intercourse with her. There is no question about that in anybody's mind. . . . The only issue . . . is who beat her and who forced this sexual intercourse with the victim . . . ."

The evidence shows beyond a reasonable doubt that sexual intercourse took place. The statement of defense counsel at trial is relevant only to the extent that it shows that, even he, at the close of the case, did not doubt the probative force of the evidence supporting an inference of sexual intercourse.

Thus far, we have discussed only the question of the sufficiency of the proof in respect to compliance with the Wisconsin Rules of Evidence, and we have assumed for the discussion above that only a nonconstitutional challenge was posed. However, the defendant asserted to the Court of Appeals, and asserts on this review, that he was denied the right of confrontation. Irrespective of the statutory compliance with the exceptions to the hearsay rule under the Rules of Evidence, he asserts he was denied the constitutional right to confront and cross-examine the medical witnesses—the declarants who prepared the hospital records, which were used to prove the element of sexual intercourse.[2]

---

[2] Although defendant also asserts the right of confrontation with respect to assertions in the medical records relating to great

The Court of Appeals, although providing a useful and informed discussion on the meaning of the confrontation clause, declined to rule on that issue, because the defendant's objection, it concluded, lacked specificity. It apparently viewed the objection as being fundamentally a hearsay objection and, therefore, concluded that to delve into the constitutional question of confrontation in the absence of a specific assertion why the confrontation clause was offended by the procedures here would constitutionalize any hearsay objection into a constitutional confrontation. Accordingly, the Court of Appeals held that no sufficiently specific objection on the confrontation ground had been made. It ruled on the question of hearsay but remanded the record to the trial court with the directions that the defendant be afforded an evidentiary hearing to establish that the evidence of the underlying examinations or reports in the medical records were untrustworthy.

The Court of Appeals took the position that the lack of an "offer of proof" or an explication of the reasoning underpinning the objection was tantamount to a lack of objection. It equated the posture of this case with that in *Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852 (1978), wherein this court held that failure to make any objection whatsoever to a patent violation of the right of confrontation was reviewable only by the invocation of the plain-error rule. Because the Court of Appeals concluded, correctly we believe, that plain error was not shown by the record, it chose to give the defendant an opportunity to restate his objections and have an evidentiary hearing by remand to the trial court. If the facts supported a posture of the case analogous to *Virgil,* as posited by the Court of Appeals, we would be inclined to agree with the procedure utilized. We think, however,

---

bodily harm, we consider that elements of that crime are proved by direct evidence outside of the medical records and, additionally, are conceded by the defendant in briefs and oral argument.

the Court of Appeals went too far if, by suggesting that the defendant had the duty to make an "offer of proof," it was contemplated that, in order to sustain a confrontation-clause claim, it was incumbent upon a criminal defendant to show, in advance of the opportunity to cross-examine, the error or prejudice that would result as a consequence of the inability to cross-examine. We believe this puts the cart before the horse. If there is a right to cross-examine, its efficacy can ordinarily be tested only after the right to cross-examine has been accorded.

We first address ourselves to the question of whether the defendant's objection to the admission of the hospital records was sufficient to squarely pose the confrontation question. In passing, we point out that the facts here are completely dissimilar to those in *Virgil*, where no objection whatsoever was raised to evidence either on the grounds of hearsay or constitutional denial of confrontation. Here, before the admission of the hospital records, the defendant made it clear that he was satisfied that the state had fully complied with the statutory requirements of submitting hospital records pursuant to sec. 908.03(6m)(a), Stats., *i.e.*, that the hearsay exception was satisfied. Defense counsel stated:

"My objection . . . is [based on] the Sixth and Fourteenth Amendments to the United States Constitution, which state that the defendant has a right to confront his accusers and with that the right to cross-examine them. Obviously, these pieces of paper are not subject to cross-examination. They are the notes of individuals and are [not] subject to cross-examination; and if these are admitted, these individuals would not have to be here and, therefore, his right of cross-examination would be denied. For that reason, I would object to any motion that they be admitted into evidence."

The records were received into evidence, and the trial court acknowledged at that time that the admission was

over the objection of the defendant. The objection was renewed at the motion for a new trial following the finding of guilty. It was apparent from the court's ruling on these motions after verdict that it was fully aware that the challenge was not on the question of hearsay but directly implicated the confrontation clause in the constitutional sense. In ruling on the motion, the trial court stated that there could have been "confrontation" by subpoenaing the physicians and that challenge to the authenticity or the correctness of the records or of the opinions in the hospital records could have been challenged by subpoenaing the persons who made the entries. In so ruling, he referred to the case of *State v. Lenarchick*, 74 Wis.2d 425, 247 N.W.2d 80 (1976), a case dealing primarily with the problems of constitutional confrontation. It is clear, as indicated in the Court of Appeals' opinion, that the defendant's objection did not specify any suspicions as to the reliability of the medical records, nor did the objection suggest what the defendant might hope to obtain from cross-examination of those who made the records. While the Court of Appeals' conclusion that the objection was less specific than it might have been is correct, the ruling that this was tantamount to a waiver of the confrontation claim does not comport with the prosecution's and the trial court's obvious understanding of the nature and basis of the objection. We agree with the defendant's contention that he made a sufficient objection because, when the record is considered as a whole, it reveals that the trial court and opposing counsel understood the nature of the objection as being on constitutional grounds.

The defect in the defendant's objection, as we see it, was not that the objection failed to raise the confrontation-clause question, but rather that the defendant failed to demonstrate to the trial court that his rights of confrontation were violated. We deem this a failure of

sufficient reason to prevail and not a failure of objection.

Although we have stated in *Lenarchick, supra,* that the hearsay rules are not necessarily congruent with those which affect the right of confrontation, nevertheless the considerations relevant to both the statutory problem and the constitutional problem are inextricably interwoven. Basically, certain types of evidence are excepted from the hearsay rule because they are thought to bear sufficient indicia of reliability that, upon proper authentication, they may be admitted into evidence without the accompanying testimony and presence for cross-examination of their maker. Depending on the degree of reliability, some of such evidence may satisfy the strictures of the Constitution which guarantee the right of confrontation.

■

In respect to the hearsay rule, a hospital record clearly falls within the category of evidence that is so reliable that not only factual observations recorded in hospital records but medical opinions and diagnoses may be admitted into evidence upon compliance with the procedural rules even though the declarants, the makers of the records, are available for cross-examination.

The unusual reliability and trustworthiness of hospital records was recognized by this court's adoption of Rule 908.03(6m)(a), 67 Wis.2d xvii. The reasons for the special credence and treatment given to hospital records, even in the absence of the supporting testimony of the makers of the records, are explained in 6 Wigmore, *Evidence,* sec. 1707, pp. 51–2. Wigmore states:

"Sec. 1707. **Hospital records.** The medical records of patients at a hospital, organized on the usual modern plan, deserve to be placed under the present principle. They should be admissible, either on identification of the original by the keeper or on offer of a certified

or sworn copy. There is a necessity (sec. 1421 *supra*); the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a circumstantial guarantee of trustworthiness (sec. 1422 *supra*); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists.

"Accordingly, modern legislation respecting regular entries (sec. 1561a *supra*, Chadbourn rev.) is now applied to hospital records, subject to various limitations noted below."

McCormick, *Evidence*, sec. 313, p. 730 (1972 ed.), also emphasizes the unusual degree of reliability which can be placed upon hospital records because of the standardized type of record keeping and because life and health depend upon the accuracy of such records. *See also* Holz, *supra*, p. 1003.

This court, in *Rupp v. Travelers Indemnity Co.*, 17 Wis.2d 16, 22, 115 N.W.2d 612 (1962), has commented upon the societal costs in terms of disruption of hospital and medical administration if the large number of the participants necessary to the making of even a single hospital record were obliged to be called as witnesses. Moreover, that case also pointed out that such a witness "no doubt, would be unable to recall any independent

recollection of his particular entry other than it was in his handwriting and was true." (P. 22)

Accordingly, the hearsay exception in respect to hospital records, as scholarly works and a specific holding of this court show, has been given attributes of unusual reliability and trustworthiness, and consideration has been given to the countervailing practical considerations which would be involved were it necessary to call all of the original witnesses.

But as stated in *Lenarchick, supra,* the admitted compliance with the hearsay rule does not necessarily mandate satisfaction of the constitutional requirements of the confrontation clause. *See also California v. Green,* 399 U.S. 149, 155 (1970) ; *Dutton v. Evans,* 400 U.S. 74, 86 (1970) ; *Vogel v. State,* 96 Wis.2d 372, 386, 291 N.W.2d 838 (1980) ; *Virgil v. State,* 84 Wis.2d 166, 185, 267 N.W.2d 852 (1978) ; and *State v. Olson,* 75 Wis.2d 575, 585, 250 N.W.2d 12 (1977).

Nevertheless, it is clear from the cases cited above that some hearsay is not barred by the basic rationale of the clause of the Constitution that guarantees the right of confrontation in a criminal case. It has long been conceded "that hearsay rules and the Confrontation Clause are generally designed to protect similar values." *California v. Green, supra,* p. 155.

In *Lenarchick, supra,* we discussed numerous situations in which it was thought as a matter of public policy that some evidence admitted as an exception to the hearsay rule carried with it such indicia of reliability that its admission did not violate the confrontation clause—for example, a dying declaration or the testimony of a deceased witness who has testified at a former trial may be admissible and not violative of the right of confrontation. *See Lenarchick, supra; Pointer v. Texas,* 380 U.S. 400, 407 (1965).

In *Dutton v. Evans, supra,* although the factual posture there arising out of an interpretation of a state conspiracy rule differs from this case, the United States Supreme Court held that it was the "indicia of reliability" (p. 89) which is determinative of whether a statement may be placed before the jury though there is no "confrontation" of the declarant. The Dutton court said:

"The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." 400 U.S. at 89.

Wigmore stated that:

"The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross examination.*" 5 Wigmore, *Evidence,* sec. 1395, p. 150 (Chadbourn rev. ed. 1974).

Nevertheless, this court, recognizing the purpose of the confrontation clause, has stated:

"Cross-examination . . . may be dispensed with under some circumstances where an uncross-examined statement is clothed with special indicia of trustworthiness. The hearsay rule and its exceptions, to a degree, may afford in some cases a sufficient degree of reliability [to satisfy the right of confrontation]." *Lenarchick, supra,* 74 Wis.2d at 437.

Hence, it appears that hearsay exceptions, although not always congruent with the satisfaction of the confrontation clause, may in some circumstances overlap and pose situations in which neither cross-examination nor prosecutorial proof of the "unavailability" of a witness is necessary. The evolution of Justice Harlan's reasoning, which we believe represents the current holdings

of the United States Supreme Court, is set forth in his concurrence to *Dutton v. Evans, supra* at 95–6. Therein, Justice Harlan said:

"Nor am ·I now content with the position I took in concurrence in *California v. Green, supra,* that the Confrontation Clause was designed to establish a preferential rule, requiring the prosecutor to avoid the use of hearsay where it is reasonably possible for him to do so—in other words, to produce available witnesses. Further consideration in the light of facts squarely presenting the issue, as *Green* did not, has led me to conclude that this is not a happy intent to be attributed to the Framers absent compelling linguistic or historical evidence pointing in that direction. It is common ground that the historical understanding of the clause furnishes no solid guide to adjudication.

"A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. secs. 1732–1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports. See, *e.g.,* Uniform Rules of Evidence 63(15), 63(30), 63 (31) ; *Gilstrap* v. *United States,* 389 F.2d 6 (CA 5 1968) (business records) ; *Kay v. United States,* 255 F.2d 476 (CA 4 1958) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless."

It is apparent, therefore, that prosecutorial failure to establish the unavailability of a witness or the inability of a defendant to cross-examine a witness does not necessarily lead to the conclusion that a defendant's confrontation rights were violated.

A situation somewhat similar to the one before us was considered in this court's case of *State v. Olson,* 75 Wis.2d 575, 250 N.W.2d 12 (1977). Therein, this court held

that the admission of hospital records without the maker thereof being present for cross-examination did not violate the right of confrontation. In *Olson,* the defendant was convicted of endangering safety by conduct regardless of life. Hospital records were introduced to show the extent of the victim's injuries. The extent of the injuries was probative of the state's contention that the defendant's conduct in kicking and beating the victim was imminently dangerous. The records used to show the extent of the injuries in that case were not an essential element of the charged crime. In addition, those records were merely corroborative of other evidence of the injuries. There was additional testimony, which was subject to cross-examination, to the same effect. In *Olson,* moreover, the defense itself made use of the records, although it had interposed a confrontation objection. In the circumstances of *Olson,* the court held that the defendant's confrontation right had not been violated, although there was nothing to show that the maker of the hospital record was unavailable or that the state made any effort to secure his presence. Most significantly, the court recognized that the confrontation right is not absolute and must be balanced against other legitimate considerations in the criminal process. The court stated:

". . . the records themselves appear to be worthy of credibility on their face . . . They include statements from the victim as to the nature of the blows and his evaluation of the injuries as well as the doctors' evaluation of the injuries, prescribed treatments and description of the recovery. There is no reason to believe that the statements contained therein are other than correct or that the facts are anything other than as stated. While demeanor evidence is not irrelevant in this situation, its importance is substantially diminished. Presumably any physician preparing such records has been found qualified to do so and would have strong motivation, based upon professional dictates and the fact that others would rely upon the work, to prepare them accurately. In addition,

had the doctor been called as a witness, he or she would very likely have used these same records to refresh his or her recollection. Thus confrontation would amount to having the doctor verify the medical reports." (pp. 591–92)

The instant case differs from *Olson* in that the hospital records therein were only corroborative of other testimony and they did not provide the sole proof of the essential element of a crime, as do the records here. In the instant case, the vaginal injuries and the presence of sperm, which were revealed only by the use of the hospital records, were the only evidence of the fact of sexual intercourse, an essential element of first-degree sexual assault under sec. 940.225 (1) (a), Stats. Nevertheless, we conclude that the rationale set forth in *Olson,* based upon prior cases, is dispositive of the defendant's claim that he was deprived of his right of confrontation.[3] *Olson* set forth a convenient listing of factors which courts have used in different circumstances in attempting to determine whether the confrontation right may be satisfied by other considerations, in absence of cross-examination. The ultimate goal of the criminal justice system, as pointed out in *Olson,* is to balance the various factors in light of the "integrity of the fact-finding process." *Olson,* p. 588, citing *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973). The court listed the following balancing factors:

"[W]hether the witness is unavailable and the prosecution has made good faith and reasonable efforts to procure the witness; whether the evidence has high standards of assurance of reliability or trustworthiness;

[3] The fact that hearsay in the present case proves an essential element of the crime does not outlaw its use. The fundamental question remains the same: Does the hearsay have sufficient indicia of trustworthiness and reliability that it will "advance a practical concern for the accuracy of the truth-determining process." *Dutton, supra* at 89.

whether the evidence is admissible under an exception to the hearsay rule; whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross-examination of the witness would not cast any doubts on the admitted statements; whether the defendant's objection to the evidence was raised via other testimony during the trial; whether the defendant had been afforded prior opportunities for cross-examination of the witness; whether the evidence is collateral or probative of an element of the crime; whether the evidence ties the defendant directly to the crime; and whether the practical considerations of convenience and speedy trials outweigh the inconvenience of producing the witness." (Footnotes omitted.) *Olson, supra,* 75 Wis.2d at 589–91.

Each confrontation claim must stand on its own facts, and it is apparent that not all of the balancing factors of *Olson* are applicable to every case. Nevertheless, it is apparent that the majority of the factors listed in *Olson* are satisfied in the present case. As discussed above, hospital records have extremely high marks in terms of trustworthiness and reliability. They are admissible under the hearsay rule for that very reason; and in analogy to Justice Harlan's business-records rationale, *supra,* they are sufficient to satisfy the confrontation clause regardless of the maker's practical availability or unavailability.

It is clear that the sufficient evidence contained in the hospital records was the clinical findings of vaginal contusions and the presence of sperm. These recited findings in the hospital records are not subject to divergent views. There is a high probability that cross-examination could not cast doubt upon these statements, especially in light of Wigmore's observations that makers of hospital records rarely recall particular cases without themselves consulting the notations in the records and relying upon them and not upon independent recollection. In the instant case, the evidence of the records does not tie the

defendant directly to the crime.[4] They prove only the occurrence of intercourse. As the Court of Appeals pointed out, what ties the defendant to the crime "is the victim's testimony that the defendant beat her into unconsciousness and that when she regained consciousness she was nude." 94 Wis.2d at 261.

It is not the hospital records which make or imply the connection between the defendant and the rape. It is the undisputed direct evidence which unmistakably connects the defendant with the incident at which intercourse occurred.

As *Rupp v. Travelers Indemnity, supra* at 22, and 6 Wigmore, *supra* at 51, point out, calling hospital personnel as witnesses to testify as to the record entries produces hospital disruptions and loss of societal values that outweigh the gossamer possibility of a meaningful cross-examination which would tend to shake the foundations of the hospital-record evidence.

■

Basically, however, the important inquiry is the reliability of the evidence and the likelihood that cross-examination could impeach its credibility or authenticity. Because of the clinical nondiagnostic nature of the essential hospital-record evidence in this case and the statutorily assumed regularity and accuracy of its entry in the hospital record, we conclude that the purpose which the confrontation clause seeks to assure—the integrity of the factfinding process—is secured and that, absent a specific challenge based on facts undermining

---

[4] For similar cases on this point, where the hospital records contained medical evidence without implicating the defendant in the crime, see *State v. Durham*, 418 S.W.2d 23 (Mo. 1967); *State v. Cook*, 440 S.W.2d 461 (Mo. 1969); *State v. Finkley*, 6 Wash. App. 278, 492 P.2d 222 (1972). *Cf. State v. White*, 72 Wash.2d 524, 433 P.2d 682 (1967), where admission of record containing opinion testimony tying defendant to the rape was held error (apparently on evidentiary, not confrontation, grounds).

those assumptions, the confrontation clause must be considered satisfied.

There are, of course, many hearsay situations where the confrontation clause would be violated if the declarant did not testify or where his unavailability was not established, and we do not hold that hearsay testimony admissible under state evidentiary rules in all, or even in most, cases satisfies the strictures of the confrontation clause. We hold only that hospital records bear such an unusual indicia of reliability and trustworthiness that, in circumstances where the evidence is clinical and nondiagnostic and there is no articulated reason that there is any inaccuracy or irregularity in the entries in the record, such records satisfy the confrontation clause. We earlier referred to the fact that the objections at trial was sufficient to put the confrontation clause at issue on appeal. We pointed out that the defect in the defendant's objection was the lack of any proof or indication or reasonable implication falling short of proof which would cast doubt upon the assumed trustworthiness and reliability of the records.

We do not hold that in all cases the use of hospital records will satisfy the confrontation clause. It is apparent, however, that they will in the usual case. However, we point out that there may be something on the face of the records themselves which would cast doubt upon those factors which would ordinarily make the records admissible and satisfactory in confrontation terms. We do not attempt to catalog those possibilities. We point out that, were it apparent that the physicians or health care providers were biased or prejudiced because of their relationship with the parties, or were there some evidence that the records were not kept in the usual course of a hospital business, an attack could be made upon the records themselves. For example, it has been suggested that were the declarant a relative of the

injured party, or intoxicated or mentally unbalanced at the time of examination, the records should not be used without the declarant's presence for cross-examination.[5]

In the case before us, we conclude that, to satisfy the confrontation clause, there was no need to produce the declarant or to establish the declarant's practical unavailability.[6] We further conclude that the Court of Appeals' direction for remand for an evidentiary hearing to determine whether the hospital records were unreliable or untrustworthy is inappropriate. While there was an objection which sufficiently posed the confrontation problem, no objection was made which cast any doubt upon the reliability or trustworthiness of these docu-

---

[5] *See, e.g.,* Note, 36 U. Cincinn. L. Rev. 734, 737 (1967).

[6] Cases from other jurisdictions provide support for the conclusion that confrontation rights were not violated in the present case. For example, in *Henson v. State,* 332 Atl.2d 773 (Del. Supr. 1975), it was held that a defendant's confrontation rights were not violated when a physician other than the one who entered the findings in a hospital record was called by the state as an expert witness to define the medical terms used. The evidence in the record was basically the same as that in the instant case, showing lacerations to the introitus and bleeding of the hymen. The Delaware court said:

"[O]nly factual clinical findings based on direct physical observation of the victim [were recorded]. It reports only data of an objective nature and contains no conclusions as to causation." (p. 775)

The court pointed out that hospital records had extreme reliability and that it was highly improbable that a cross-examination of the original declarant physician would cast any doubt of the findings stated in the hospital record. The *Henson* court also found important that the declarant physician was unquestionably unavailable as a witness. However, the court placed inappropriate reliance on Justice Harlan's concurrence in *California v. Green, supra,* to the effect that confrontation always required the production of available witnesses. As we have pointed out, *supra,* Justice Harlan specifically retracted that view in his separate concurrence in *Dutton.* Basically, *Henson* adopts the same rationale as that utilized in the instant case.

ments. We reverse that part of the Court of Appeals' decision which directed the remand for an evidentiary hearing and affirm the trial court's postconviction order that the confrontation clause was not violated.

Defendant's third argument is that he cannot properly be convicted of both first-degree sexual assault causing great bodily harm, contrary to sec. 940.225 (1) (a), Stats., and injury by conduct regardless of life, contrary to sec. 940.23, because the latter is a lesser-included offense of the former.[7] This argument has two prongs: (1) that even under the "elements" test this court now applies, the latter offense is a lesser-included one; and (2) that because of the alleged state of the law when this case was tried, defendant was entitled to a "factual basis"

---

[7] The statute governing lesser-included offenses is sec. 939.66, Stats.:

"939.66 **Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

"(2) A crime which is a less serious type of criminal homicide than the one charged; or

"(3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

"(4) An attempt in violation of s. 939.32 to commit the crime charged; or

"(5) The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

Subsection (1) governs the present case. The only other subsection possibly relevant is subsection (3); that subsection is inapplicable, both because the allegedly "lesser" offense, injury by conduct regardless of life, requires more *mens rea* than "recklessness or negligence," and because sexual assault, the allegedly "greater" offense, requires less *mens rea* than "criminal intent." *See infra*, p. 483, n. 9.

approach to lesser-included offenses, under which analysis the latter offense was a lesser-included one.

This court is committed to the "elements only" analysis of whether one offense is included within another. The test focuses not on the peculiar factual nature of a given defendant's criminal activity, but on whether the lesser offense is statutorily within the greater. *Hawthorne v. State,* 99 Wis.2d 673, 299 N.W.2d 866 (1981). Stated in other words, an offense is a "lesser included" one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the "greater" offense. *Id,* at 681. Conversely, an offense is not a lesser-included one if it contains an additional statutory element. This court has stated this test often and clearly. *Randolph v. State,* 83 Wis.2d 630, 266 N.W.2d 334 (1978); *State v. Verhasselt,* 83 Wis.2d 647, 266 N.W.2d 342 (1978); and *State v. Smith,* 55 Wis.2d 304, 310, 198 N.W.2d 630 (1972). In *Randolph,* the court additionally capsulized the rule by the formulation that "for one crime to be included in another, it must be 'utterly impossible' to commit the greater crime without committing the lesser." *Randolph, supra,* 83 Wis.2d at 645.

The elements of first-degree sexual assault under sec. 940.225 (1) (a), Stats., relevant to this case, are:

1. *Sexual intercourse* (defined as vulvar penetration, or any intrusion into the genitals, by a part of the body or by an object, and not requiring emission. *See* secs. 940.225 (5) (c) and 939.22 (36), Stats.).

2. *Without consent* (which is presumptively lacking for an unconscious person (sec. 940.225 (4) (c)) and is not at issue here).

3. *Great bodily harm* (bodily injury which creates a high probability of death, or causes serious permanent disfigurement, or causes a permanent or protracted loss

or impairment of the function of any bodily member or organ or other serious bodily injury. Sec. 939.22 (14), Stats.).

The elements of injury by conduct regardless of life under sec. 940.23, Stats., are as follows:

1. *Great bodily harm* (defined as above).

2. Conduct *"imminently dangerous" to another* (conduct inherently and consciously dangerous to life and not such as casually produces great bodily harm by misadventure. *See Balistreri v. State,* 83 Wis.2d 440, 454, 265 N.W.2d 290 (1978)).

3. Conduct evincing a *depraved mind regardless of human life* (this refers to an utter lack of concern for the life of another and for which conduct there is not justification or excuse).

4. *Causal relation* between (1), victim's injuries, and (2)–(3), defendant's imminently dangerous conduct evincing depraved mind regardless of life.

Injury by conduct regardless of life contains on its face two elements which are "in addition" to the elements of first-degree sexual assault and thus would render the former a separate, not a lesser-included, offense: "Imminently dangerous" (No. 2) and "depraved mind regardless of life" (No. 3). It is only the latter element, however—"depraved mind regardless of life"—which is argued by the parties and addressed by the Court of Appeals as an additional element. That court held that this additional statutory element, which is not essential to first-degree sexual assault, renders injury by conduct regardless of life not a lesser-included offense. 94 Wis.2d at 254.[8]

---

[8] The Court of Appeals also noted, correctly, that first-degree sexual assault can occur on the basis of pregnancy as an alternative element to great bodily harm (element No. 3). However, that court erred in concluding that injury by conduct regardless of

The defendant argues that it is "utterly impossible" (*Randolph, supra*) to commit nonconsensual intercourse causing great bodily harm and not be guilty of conduct imminently dangerous to another and evincing a depraved mind, and therefore that injury by conduct regardless of life must be lesser-included in first-degree sexual assault. Because of the surface logic of this argument, a rationale beyond the bare invocation of the words, "depraved mind," element of the crime must be demonstrated. This is especially so because neither crime requires a specific criminal intent to commit the proscribed act.[9] Thus, there is no initially apparent *mens rea* distinction.

---

life is therefore not lesser-included because it contains the additional element of "great bodily harm." This would only be so where the first-degree-sexual-assault charge is based on the statutory alternative element No. 3 of pregnancy, rather than great bodily harm. In that situation, injury by conduct regardless of life would contain an element not present in sexual assault. But here, defendant is charged with great bodily harm, so that element is shared in the two offenses.

[9] As to sexual assault: Under the old rape law, sec. 944.01, Stats. 1973, specific intent to have intercourse was not a required element of the crime. *See Redepenning v. State*, 60 Wis.2d 471, 480–81, 210 N.W.2d 673 (1973); *Brown v. State*, 59 Wis.2d 200, 213–14, 207 N.W.2d 602 (1973); *Flowers v. State*, 43 Wis.2d 352, 168 N.W.2d 843 (1969). This was because the statute used none of the words existing in sec. 939.23(1), Stats. (the general criminal statute defining words signifying intent), and "[t]he element of intent as to the statutory crimes is only necessary when specified by statute." *Redepenning, supra*, 60 Wis.2d at 480–81. The new sexual assault law, sec. 940.225, Stats. (Laws of 1975, ch. 184, sec. 5) also omits the use of any such words. The new jury instructions assert that criminal intent, therefore, continues to be absent as a required element of the crime, creating a type of "strict liability." *See* Introductory Comment to Wis JI— Criminal, Part II, secs. 1200–1219, at pp. 13–14.

As to injury by conduct regardless of life, it has likewise often been stated by this court that the element of "depraved mind" in the offense does not require any specific criminal intent within

The element, "depraved mind regardless of human life," has been frequently described by this court. The language is general, but the import is clear. It is something more than negligence but something less than specific intent:

"A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm." *State v. Weso,* 60 Wis.2d 404, 411–12, 210 N.W.2d 442 (1973).

Alternatively, we have said:

"[I]f a general intent exists to do acts which are likely to result in death, a specific intent to endanger the safety of the victim is unnecessary." *Balistreri v. State,* 83 Wis.2d 440, 448, 265 N.W.2d 290 (1978).
"Although the conduct may in fact result in nothing more than the danger of bodily injury, it must be so inherently fraught with danger to the victim's life that to engage in it implies a constructive intent to maim or kill." *Id.* at 458.

This court comprehensively defined the nature of "depraved mind" in *Weso, supra,* 60 Wis.2d at 409–12.[10] We need not repeat verbatim these definitions herein.

Under these definitions, the "depraved mind" element imports a state of mind which, although less than specific intent, is more criminally culpable than negligence because of its offensive and shocking nature. It is a heinous

the meaning of sec. 939.23, Stats. *See, e.g., State v. Verhasselt,* 83 Wis.2d 647, 266 N.W.2d 342 (1978).

Thus, there is no obvious distinction between the type of intent required for the two offenses based on the existence of the element of "depraved mind" in injury by conduct regardless of life and its absence in sexual assault.

[10] *See also Randolph v. State,* 83 Wis.2d 630, 266 N.W.2d 334 (1978); *Wagner v. State,* 76 Wis.2d 30, 47–8, 250 N.W.2d 331 (1977); *Kirby v. State,* 86 Wis.2d 292, 272 N.W.2d 113 (Ct. App. 1978).

type of *mens rea* which constitutes a distinct and blameworthy element of three statutory crimes.[11] Examples from the cases bear out its identifiability as a concrete, specific, and separate element. Some of the situations in which it was found to exist are: Where the defendant slashed with a knife the face of another, in an alleged attempt to scare him and dissuade him from his desire to fight (*Weso, supra,* 60 Wis.2d 404) ; drunkenly firing a .35 mm. rifle toward what was believed to be a police car, resulting in the wounding of an innocent bystander (*Verhasselt, supra,* 83 Wis.2d 647). In each of these instances, there was found to be an utter disregard of the possible consequences.

By contrast, it has been held that a depraved mind was not demonstrated in the following circumstances: Drunken nighttime drag racing resulting in death of a pedestrian, because the defendant-driver made a last-second effort to swerve and avoid contact (*Wagner v. State,* 76 Wis.2d 30, 45–9, 250 N.W.2d 331 (1977)) ; high-speed police chase of defendant believed to be driving stolen car, resulting in injury to a citizen, where the defendant attempted to avoid collision by applying brakes and slowing (*Balistreri v. State,* 83 Wis.2d 440, 458, 265 N.W.2d 290 (1978)). Each of these cases "show some regard for the life of others. Conduct evincing a depraved mind must do more than create a situation of unreasonable risk of harm or death; it must be devoid of regard for the life of another." *Balistreri, supra* at 457–58.

Thus, the "depraved mind" is a genuine additional element which, under the statutory elements analysis, distinguishes injury by conduct regardless of life from first-degree sexual assault. It imports a state of mind which,

---

[11] The instant crime (injury by conduct regardless of life), endangering safety by conduct regardless of life, and second-degree murder. The element has the same meaning in all three statutes. *See Balistreri v. State, supra,* 83 Wis.2d 440, 446–47.

although it might accompany the commission of first-degree sexual assault, or other types of crime against persons, does not necessarily do so. Thus, it is not "utterly impossible" to commit first-degree sexual assault without also committing injury by conduct regardless of life. *Randolph v. State, supra.*

We will not catalog situations in which a person sexually assaulted could suffer great bodily harm and yet not be the victim of conduct evincing a depraved mind. Certainly, the bodily injuries resulting to a pedestrian struck by an automobile do not differ depending on whether the driver's conduct was depraved. The examples above show that severity of injury may be the same or worse absent depravity. Depravity is unrelated to the extent of injury. Rather, it goes to culpability and is dependent on the nature of the evidenced mental attitude of the actor. It is equally clear that first-degree sexual assault, which, by definition, results in great bodily harm, can result although the conduct of the assailant was not depraved in the sense the phrase is used in the statute. We give but one hypothetical example—there could be a litany of others. Great bodily harm sufficient to satisfy that element of the crime would occur if the victim were injured in a fall during, and caused by, the sexual assault although no injury thereby was intended and even in circumstances where the assailant attempted to prevent the fall. This hypothetical is analogous to the situation where injury is caused by the culpable conduct of a driver who attempted to avoid a collision. Great bodily harm occurs without conduct evincing depravity.

While in the instant case there is no doubt that the conduct of Hagenkord evinced depravity, the relevant inquiry is whether first-degree sexual assault is possible as a matter of law absent that element. It is not "utterly impossible" to convict for that crime absent that element. It can, of course, be committed with that concomitant ele-

ment, but that element is not essential to the crime. Hence, the claimed lesser-included offense contains an element that need not be proved to convict for the greater crime of first-degree sexual assault.

Defendant argues that, at the time of his trial, there was a judicial interpretation of sec. 939.66 (1), Stats., that if two offenses are of the same nature (*e.g.*, bodily-security offenses) and spring from the same incident, and the particular facts of the case as presented by the pleadings and proof show that the greater crime could not have been committed without also committing the lesser, then although the lesser one contain an additional statutory element, it is lesser-included and cannot support a separate count or conviction. He claims to be entitled to that analysis. We do not agree with this view of our judicial history.

Defendant also argues that, because no legislative change altered the interpretation of sec. 939.66 (1), Stats., from the alleged "factual basis" to "elements only," it would be a denial of due process for defendant not to have the "factual basis" test applied to his actions in this case.

This claim must fail for several reasons.

Although defendant asserts that the statutory elements test was not adopted until the decision of *Randolph v. State*, 83 Wis.2d 630, 266 N.W.2d 334 (1978), we find this assertion incorrect.

It is obvious from a reading of *State v. Smith*, 55 Wis. 2d 304, 198 N.W.2d 630 (1972), a case which antedated the facts giving rise to this case by over four years, that this court was firmly committed to the statutory analysis only. In summarizing this court's position, and after examining some of the same cases on which the defendant herein relies, Justice Horace Wilkie stated:

"[T]hese cases do not support that proposition . . . In short, the test for a lesser included offense is not the

peculiar nature of a single defendant's crime, rather it is whether the lesser offense is *statutorily* within the greater." (Emphasis supplied.) *Smith, supra* at 310.

A close examination of *State v. Melvin,* 49 Wis.2d 246, 181 N.W.2d 490 (1970), on which the defendant heavily relies, does not reveal that this court therein adopted the factual approach urged herein. What that case decided was a secondary question—whether a particular lesser-included-offense jury charge should or should not have been given, as an alternative to the greater offense. *Melvin, supra* at 252–53. This is boiler-plate law, under which the judge must look to the facts to determine whether, assuming there is a lesser-included offense, under the state of the evidence there are reasonable grounds to support conviction on the lesser offense and there are not reasonable grounds to convict on the greater. *See Commodore v. State,* 33 Wis.2d 373, 382, 147 N.W.2d 283 (1967). This is not a question of whether one crime is lesser-included within another.

*Geitner v. State,* 59 Wis.2d 128, 207 N.W.2d 837 (1973), which preceded Hagenkord's criminal activity by three years, also clearly stated that whether a crime is capable of being lesser-included is controlled by the statutory elements test. *Geitner* made clear that evaluation of the evidence—of the facts of the particular crime—is the relevant inquiry only after the existence of a lesser-included crime is established by examination of the statutory elements. In explaining this point, the court discussed *Melvin, supra; Smith, supra; Holesome v. State,* 40 Wis.2d 95, 161 N.W.2d 283 (1968) ; *Martin v. State,* 57 Wis.2d 499, 204 N.W.2d 499 (1973) ; and *Laev v. State,* 152 Wis. 33, 139 N.W. 416 (1913). We could, ad nauseam, point out the misplaced reliance of the defendant on other cases. We decline to do so.

It is undisputable that any possible confusion—a possibility that we consider miniscule—was put to rest long

before Hagenkord sexually assaulted the victim herein. There was no entitlement to the "factual" test urged by the defendant.

Additionally, an examination of the record shows that the defendant at trial relied on the statutory elements test, not the factual analysis that he now seems to assert. Such reliance on the "elements only" test is apparent in the record of the preliminary hearing and of the hearing on postconviction motions. The record shows that the defendant lost these rounds as the result of the application of correct legal standards. This eleventh hour assertion of a non-existent theory of factual elements is as untimely as it is incorrect.

The Court of Appeals applied the appropriate and applicable standard in reviewing defendant's claim. Its conclusion in that respect must be affirmed.

Defendant's position is that this court has no authority to change an interpretation of a statute (sec. 939.66 (1), Stats.) from one alleged meaning ("factual basis") to another ("elements only") absent intervening legislative change. He apparently sees this as an usurpation of legislative power. As we have demonstrated, there never was a "factual basis" construction of sec. 939.66 (1), Stats., which constituted a definitive or singular judicial construction of the statute. Accordingly, we decline in this opinion to indulge in a hypothetical discussion of whether a criminal who has committed a crime of violence against another human being has the right to rely on a court's interpretation of a statutory crime.

We affirm that portion of the decision of the Court of Appeals that found the hospital records properly admissible in evidence. We affirm that part of the decision that held the two crimes of which the defendant was convicted were separate crimes, and for which separate convictions and sentences were properly imposed. We reverse that portion of the decision that directed a re-

mand for further evidentiary hearing on the question of the confrontation clause. We hold that the trial record was sufficient to raise the confrontation issue, and, as discussed above, conclude that the confrontation clause was not violated. Therefore, the judgment and order of the trial court are reinstated in their entirety.

*By the Court.*—Decision affirmed in part; reversed in part.