STATE of Wisconsin, Plaintiff-Appellant-Cross-Petitioner,

v.

Daniel J. BAUER, Defendant-Respondent-Petitioner.

Supreme Court

*No. 81–707–CR. Argued October 6, 1982.—Decided November 2, 1982.*

(Also reported in 325 N.W.2d 857.)

For the defendant-petitioner there were briefs by *Mary Lou Robinson* and *Robinson, Smith & Robinson* and oral argument by *Nila J. Robinson,* all of Appleton.

For the plaintiff-cross-petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   This is a review of an unpublished decision of the court of appeals which affirmed in part and reversed in part an order of Outagamie county circuit court Judge Nick F. Schaefer.

On April 25, 1980, at approximately 12:50 a.m., Jacqueline Rastall reported to the authorities that she had been sexually assaulted about three hours earlier. Rastall told the authorities that shortly after she left the Treasure Island department store, located near Appleton, Wisconsin, a man wearing a ski mask rose from the backseat of her car. According to Rastall, the man held a knife to her throat and blindfolded her. He then drove the car to a field where he ordered Rastall to undress. The man allegedly forced Rastall to engage in sexual intercourse and oral sex. After the sexual acts were committed, the man allowed Rastall to dress, forced her to lie down on the front seat so that she would not be seen,

and he removed his mask. The record indicates that he took these steps to avoid appearing conspicuous while driving through lighted areas on the way back to town. Sometime during the return trip, Rastall was able to get a look at the man by peeking out from under her blindfold. The man drove Rastall to a parking lot near an apartment complex and an Open Pantry store. He warned Rastall not to report the incident and forced her to turn away from him. He then tore the blindfold from her eyes and fled between the buildings of the apartment complex.

Rastall drove to her aunt's house in Kimberly. Shortly thereafter Rastall reported the incident to the police and was taken to the hospital. Rastall gave a complete description of her assailant to the Rape Crisis counselor and later worked with the police to compile a composite of the offender. Rastall identified Daniel Bauer as her assailant in both a photo lineup and a conventional lineup. A criminal complaint was filed on May 30, 1980, charging Daniel Bauer with second-degree sexual assault and false imprisonment with identity concealed in violation of secs. 940.225 (2), 940.30, and 946.62, Stats. [1]

[1] "940.225  Sexual assault.

"(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

"(b) Has sexual contact or sexual intercourse with another person without consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim.

"(c) Has sexual contact or sexual intercourse with a person who suffers from a mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct, and the defendant knows of such condition.

"(d) Has sexual contact or sexual intercourse with a person who the defendant knows is unconscious.

Rastall testified about the alleged sexual assault and false imprisonment at a preliminary examination and again identified Bauer as the offender. Bauer's counsel cross-examined Rastall at the hearing. Shortly after the preliminary examination, Rastall was killed in an automobile accident. Bauer moved to suppress Rastall's preliminary examination testimony and extrajudicial statements. He contended that the admission of such evidence at trial would violate his Sixth Amendment right to confront witnesses against him.[2]

The trial court granted Bauer's pretrial motion to suppress Rastall's preliminary examination testimony and extrajudicial statements on the ground that admission of such evidence would violate Bauer's constitutional right to confrontation. The state appealed the trial court's order pursuant to sec. 974.05(1)(d)2, Stats. The court of appeals affirmed the trial court's decision to suppress Rastall's extrajudicial statements. With respect to Rastall's preliminary examination testimony, however, the court of appeals reversed the decision of the trial court and held that such evidence was admissible. Both

"(e) Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 18 years without consent of that person, as consent is defined in sub. (4)."

"940.30 **False imprisonment.** Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony."

"946.62 **Concealing identity.** Whoever commits a crime while his or her usual appearance has been concealed, disguised or altered, with intent to make it less likely that he or she will be identified with the crime, in addition to the maximum punishment fixed for such crime, in case of conviction for a misdemeanor is guilty of a Class E felony, and in case of conviction for a felony is guilty of a Class D felony."

[2] Bauer argues that the admission of such evidence would also offend Article 1, section 7, of the Wisconsin Constitution.

Bauer and the state sought review of portions of the court of appeals' decision. We granted both petitions.

The issue presented for review is whether the admission into evidence at trial of the deceased victim's preliminary examination testimony and extrajudicial statements would violate the defendant's constitutional right to confrontation.

I

The Sixth Amendment's confrontation clause, made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article I, sec. 7 of the Wisconsin Constitution similarly provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." We have recognized that "the right to confrontation . . . is an essential and fundamental requirement for a fair trial." *Sheehan v. State,* 65 Wis. 2d 757, 764, 223 N.W.2d 600 (1974). The primary purpose of the confrontation right is to ensure that the trier of fact has a satisfactory basis for evaluating the truthfulness of evidence admitted in a criminal case.[3] *Dutton v.*

---

[3] In *Mattox v. United States,* 156 U.S. 237, 242–43 (1895), the Supreme Court noted that the confrontation right gives an accused: "an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Moreover, the right of cross-examination, a primary component of the more general right of confrontation, has been frequently referred to as the " 'greatest legal engine ever invented for the discovery of truth.' " *California v. Green,* 399 U.S. 149, 158 (1970) [quoting 5 J. Wigmore, *Evidence* sec. 1367 (3d ed. 1940)].

*Evans,* 400 U.S. 74, 89 (1970). Consequently, "its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process." ' " *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973) [quoting *Berger v. California,* 393 U.S. 314, 315 (1969) (Per Curiam).]

A literal reading of the confrontation clause would require, upon objection, the exclusion of any statement made by a declarant not present at trial. Such an interpretation would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Ohio v. Roberts,* 448 U.S. 56, 63 (1980) ;[4] *State v. Dorcey,* 103 Wis. 2d 152, 161, 307 N.W.2d 612 (1981). Although very important, "[t]he confrontation right is not absolute." *State v. Olson,* 75 Wis. 2d 575, 588, 250 N.W.2d 12 (1977). It "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox v. United States,* 156 U.S. 237, 243 (1895). The United States Supreme Court recently noted that "competing interests, if 'closely examined,' *Chambers v. Mississippi,* 410 U.S., at 295, may warrant dispensing with confrontation at trial." *Ohio v. Roberts,* 448 U.S. at 64. The Court recognized that "every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." *Id.* The difficulty lies in determining when interests such as these justify dispensing with confrontation at trial.

---

[4] The *Roberts* Court went on to say: "The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay. See *California v. Green,* 399 U.S., at 156–157, and nn. 9 and 10; see also McCormick sec. 252, p. 606. Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418 (1965)." *Ohio v. Roberts,* 448 U.S. 56, 63 (1980) (footnote omitted).

The threshold question is whether the evidence sought to be introduced is admissible under the Rules of Evidence of Wisconsin, chs. 901–911, Stats. *State v. Lenarchick,* 74 Wis. 2d 425, 433, 247 N.W.2d 80 (1976). If the evidence does not fit within a recognized hearsay exception, it must be excluded. Only after it is established that the evidence is admissible under a hearsay exception does it become necessary to consider the confrontation clause.

It has long been recognized that the "Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots." *Dutton v. Evans,* 400 U.S. at 86. They are "generally designed to protect similar values." *California v. Green,* 399 U.S. 149, 155 (1970). However, "the hearsay rule is not congruent in all cases with the requirements of the confrontation clause." *Nabbefeld v. State,* 83 Wis. 2d 515, 522, 266 N.W.2d 292 (1978); *see also Dutton v. Evans,* 400 U.S. at 86. In *State v. Lenarchick,* 74 Wis. 2d at 432, we held that "compliance with a state's hearsay rule does not *ipso facto* insure compliance with the constitutional mandate for confrontation in a criminal case." Therefore, in determining whether hearsay evidence is admissible in a criminal case, it is necessary to look beyond the hearsay rules.

In *Ohio v. Roberts,* 448 U.S. at 65–66, the Supreme Court set forth a two-step approach to be used in determining whether hearsay evidence satisfies the requirements of the confrontation clause.

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability

of, the declarant whose statement it wishes to use against the defendant. See *Mancusi v. Stubbs,* 408 U.S. 204 .(1972) ; *Barber v. Page,* 390 U.S. 719 (1968). See also *Motes v. United States,* 178 U.S. 458 (1900) ; *California v. Green,* 399 U.S., at 161–162, 165, 167, n. 16.

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder v. Massachusetts,* 291 U.S., at 107. The principle recently was formulated in *Mancusi v. Stubbs:*

" 'The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," *Dutton v. Evans, supra,* at 89, and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," *California v. Green, supra,* at 161. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability." ' " 408 U.S., at 213. (Footnote omitted.)

This court recently applied the foregoing analysis of *Ohio v. Roberts* in *State v. Dorcey, supra.* We now take this opportunity to further explain our interpretation of the *Roberts* rationale.

The requirement that the witness be unavailable has been explained by the United States Supreme Court. "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25 (1968). In *Ohio v. Roberts,* 448 U.S. at 74, the Court elaborated, stating:

"The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists

(as, for example, the witness' intervening death), 'good faith' demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. 'The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.' *California v. Green,* 399 U.S., at 189, n. 22 (concurring opinion, citing *Barber v. Page, supra*). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." (Emphasis in original.)

There are, however, limited exceptions to the unavailability requirement. "[P]rosecutorial failure to establish the unavailability of a witness . . . does not necessarily lead to the conclusion that a defendant's confrontation rights were violated." *Hagenkord v. State,* 100 Wis. 2d 452, 473, 302 N.W.2d 421 (1981). In *Hagenkord* we recognized that in certain situations with certain evidence the prosecutor may not have to meet the unavailability requirement to satisfy the confrontation clause. We cited Justice Harlan's concurrence in *Dutton v. Evans,* 400 U.S. at 95–96, as representative of the current holdings of the United States Supreme Court:

" 'Nor am I now content with the position I took in concurrence in *California v. Green, supra,* that the Confrontation Clause was designed to establish a preferential rule, requiring the prosecutor to avoid the use of hearsay where it is reasonably possible for him to do so—in other words, to produce available witnesses. Further consideration in the light of facts squarely presenting the issue, as *Green* did not, has led me to conclude that this is not a happy intent to be attributed to the Framers absent compelling linguistic or historical evidence pointing in that direction. It is common ground that the historical understanding of the clause furnishes no solid guide to adjudication.

" 'A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of

declarants where production would be unduly inconvenient and of small utility as a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. secs. 1732–1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports. See, *e.g.*, Uniform Rules of Evidence 63 (15), 63 (30), 63 (31) ; *Gilstrap v. United States,* 389 F.2d 6 (CA5 1968) (business records) ; *Kay v. United States,* 255 F.2d 476 (CA4 1958) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless.' " *Hagenkord v. State,* 100 Wis. 2d at 473.

In light of this language we held in *Hagenkord* that it did not offend the confrontation clause to admit hospital records even though the prosecutor failed to satisfy the unavailability requirement. In that case the evidence was considered particularly reliable and unlikely to be impeached on cross-examination. Therefore, the defendant would have received little, if any, benefit had the witnesses been called. It must be noted, however, that only in special circumstances will the unavailability requirement be waived. The prosecutor is generally required to produce the witnesses or establish their unavailability.

The *Roberts* Court also established a framework to be applied in determining whether the "indicia of reliability" requirement has been satisfied. The Court held that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. at 66. This inference of reliability is derived from the fact that "certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' " *Id.* at 66. While this inference of reliability is strong, evidence falling within a firmly rooted hearsay exception is not admissible per se. The trial court must

still examine each case to determine whether there are unusual circumstances which may warrant exclusion of the evidence. If no such unusual circumstance exists, the evidence may properly be admitted. "Where unusual circumstances are apparent, the court may have reason to inquire into whether a meaningful confrontation was indeed afforded a defendant." *Nabbefeld v. State,* 83 Wis. 2d at 527. However, notwithstanding the existence of unusual circumstances, the evidence may be admitted where there was been "substantial compliance with the purposes behind the confrontation requirement." *California v. Green,* 399 U.S. at 166. Those purposes are satisfied when the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement. *Nabbefeld v. State,* 83 Wis. 2d at 524.

When hearsay evidence does not fall within a firmly rooted exception, it may still be admitted upon a showing of "particularized guarantees of trustworthiness."[5]

---

[5] In *State v. Olson,* 75 Wis. 2d 575, 589–91, 250 N.W.2d 12 (1977), we recognized several factors which may be instructive in making such a showing: "whether the witness is unavailable and the prosecution has made good faith and reasonable efforts to procure the witness; whether the evidence has high standards of assurance of reliability or trustworthiness; whether the evidence is admissible under an exception to the hearsay rule; whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross-examination of the witness would not cast any doubts on the admitted statements; whether the defendant's objection to the evidence was raised via other testimony during the trial; whether the defendant had been afforded prior opportunities for cross-examination of the witness; whether the evidence is collateral or probative of an element of the crime; whether the evidence ties the defendant directly to the crime; and whether the practical considerations of convenience and speedy trials outweigh the inconvenience of producing the witness." (Footnotes omitted.)

It must be noted, however, that this list is probably incomplete. Moreover, "[e]ach confrontation claim must stand on its own facts, and it is apparent that not all of the balancing factors of *Olson*

*Ohio v. Roberts,* 448 U.S. at 66. The prosecutor must make a particularized showing that the evidence has sufficient indicia of reliability and that the trier of fact has a reasonable basis to evaluate its truthfulness. Absent such a showing, the evidence must be excluded.

The standard to be applied in determining whether hearsay evidence is admissible in a criminal case may be summarized as follows. The threshold question is whether the evidence fits within a recognized hearsay exception. If not, the evidence must be excluded. If so, the confrontation clause must be considered. There are two requisites to satisfaction of the confrontation right. First, the witness must be unavailable. Second, the evidence must bear some indicia of reliability. If the evidence fits within a firmly rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. This inference of reliability does not, however, make the evidence admissible per se. The trial court must still examine the case to determine whether there are unusual circumstances which may warrant exclusion of the evidence. If the evidence does not fall within a firmly rooted hearsay exception, it can be admitted only upon a showing of particularized guarantees of trustworthiness.

## II

We now turn to the application of this standard to the facts of the instant case. The first evidence to be considered is Rastall's preliminary hearing testimony. This evidence clearly falls within a recognized hearsay exception. Former testimony is generally admissible within sec. 908.045(1), Stats., which provides:

are applicable to every case." *Hagenkord v. State,* 100 Wis. 2d 452, 476, 302 N.W.2d 421 (1981).

"**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered."

Moreover, Rastall's intervening death satisfies the unavailability requirement.

In *Ohio v. Roberts, supra,* the Court found that preliminary examination testimony falls within a "firmly rooted" hearsay exception. Therefore, the reliability of Rastall's preliminary examination testimony can be inferred.

Bauer contends, and the trial court found, however, that unusual circumstances precluded satisfaction of the confrontation right. According to Bauer, he was denied a meaningful confrontation because at the preliminary examination he was not afforded an opportunity to cross-examine Rastall as to an important issue—her credibility.[6] We agree with Bauer and the trial court insofar as Rastall's credibility being an important issue in this case.[7] We do not agree, however, that Bauer was denied his constitutional right to confrontation.

---

[6] In Wisconsin cross-examination during the preliminary examination is formally limited to the issue of probable cause. Credibility is not a proper avenue of inquiry during this stage of the criminal proceeding. *State ex rel. Huser v. Rasmussen,* 84 Wis. 2d 600, 614, 267 N.W.2d 285 (1978).

[7] Lack of consent is a primary element of both second-degree sexual assault, sec. 940.225(2), Stats., and false imprisonment, sec. 940.30. Rastall's preliminary examination testimony appears to be the most important, and perhaps the only, piece of evidence on the issue of consent. Therefore, Rastall's credibility is a very important issue in this case.

The Seventh Circuit Court of Appeals recently addressed this same issue in a case in which the material facts are similar to those in the instant case. *United States ex rel. Haywood v. Wolff*, 658 F.2d 455 (7th Cir 1981), *cert denied*, 454 U.S. 1088, involved a shooting incident in which three people were killed and two others wounded. One of the wounded persons, named Stanton, identified the defendant from a collection of photographs as one of three men involved in the shooting. During the subsequent preliminary hearing, Stanton again identified the defendant as the person who had shot him. On cross-examination defense counsel questioned Stanton about the shooting incident and his efforts to assist the police in its investigation. The presiding judge sustained the state's objection to several questions on the ground that they were beyond the scope of the preliminary hearing.[8] The court entered a finding of probable cause. Prior to trial, however, Stanton died. The prosecution announced its intention to introduce into evidence Stanton's preliminary hearing testimony. The defendant challenged the evidence on the ground that it violated his constitutional right to confrontation. He argued that he had been denied an adequate opportunity to cross-examine Stanton because cross-examination during the preliminary hearing was limited to the issue of probable cause. Therefore, the defendant was not allowed to cross-examine Stanton as to his credibility. Stanton's credibility was an important issue because his former testimony was probably the most important evidence in the prosecution's case.[9]

[8] Similar to the Wisconsin rule, in Illinois cross-examination during the preliminary examination is limited to the issue of probable cause.

[9] According to dissenting Senior Circuit Judge Swygert, "[t]he Government's entire case rested upon Stanton's testimony." *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 464 (7th Cir. 1981), *cert. denied*, 454 U.S. 1088.

The *Haywood* court closely followed the rationale of *Ohio v. Roberts, supra,* in holding that admission of Stanton's former testimony did not violate the confrontation clause. The fact that cross-examination during the preliminary hearing was limited did not render the testimony inadmissible. The court noted that "[i]n upholding the introduction of an unavailable witness' preliminary hearing testimony, the Supreme Court has never said that the opportunity for cross-examination afforded at the preliminary hearing must be identical with that required at trial." *Haywood,* 658 F.2d at 461. Basically, the court concluded that the purposes behind the confrontation clause had been satisfied. "The cross-examination conducted by counsel, though less extensive than would have been allowed at trial, provided adequate indicia of reliability and, together with the other evidence introduced at trial, afforded the trier of fact a satisfactory basis for evaluating the truth of the testimony to justify admission of the transcript once Stanton became unavailable." *Id.* at 461. In reaching this conclusion the court noted that Stanton's preliminary hearing testimony was:

"given under circumstances that were intended to impress upon him the importance of telling the truth. This was not a casual statement made in an informal setting where one might reasonably feel at liberty to exaggerate or color his version of an event. Stanton testified in open court under oath and subject to criminal penalties for perjury. His testimony was not about someone far removed from the proceedings; Haywood was seated directly before him as Stanton positively identified him as the man who had shot him and his girlfriend."

"Furthermore, even though counsel's opportunity to cross-examine Stanton at the hearing may have been more limited than would be allowed at trial, it was more than adequate to allow him to determine precisely what Stanton claimed to know and the claimed basis for his knowledge." *Id.* at 463.

We find the rationale of *Haywood* directly applicable to the instant case. As noted earlier, the material facts are very similar. Moreover, the "unusual circumstances" cited by Bauer as requiring exclusion of Rastall's former testimony are virtually the same as those considered by the Seventh Circuit in *Haywood* (*i.e.*, cross-examination was limited, restricting questioning as to an important issue in the case—the witness's credibility).

When unusual circumstances exist, the test for determining the admissibility of an unavailable declarant's prior statement is whether the purposes behind the confrontation clause have been satisfied. As in *Haywood,* those purposes were satisfied in the instant case. The preliminary examination transcript bears sufficient indicia of reliability and will afford the trier of fact a reasonable basis for evaluating the truthfulness of Rastall's testimony. Rastall testified "under circumstances closely approximating those that surround the typical trial." *California v. Green,* 399 U.S. at 165. During the preliminary examination, Rastall was under oath; the defendant was represented by counsel; the witnesses were subject to cross-examination; the proceedings were conducted before a judicial tribunal; and the proceedings were recorded. These accoutrements of the preliminary examination provide an assurance of trustworthiness. *Ohio v. Roberts,* 448 U.S. at 73; *California v. Green,* 399 U.S. at 165.[10]

Furthermore, we conclude that defense counsel's cross-examination of Rastall was sufficient to comply with the

---

[10] Bauer's contention that the instant case is different because the testimony was given in a closed courtroom, his counsel during the preliminary examination was inexperienced, and he is currently being represented by different counsel is without merit. These distinctions do not significantly depreciate the guarantee of trustworthiness provided by the preliminary examination.

strictures of the confrontation clause.[11] The fact that the cross-examination may have been less extensive than would be allowed at trial is not determinative. Nor does the fact that other cases have ascribed some importance to the existence of corroborating evidence alter the result in this case (even assuming that no such corroborating evidence will be introduced).[12] While corroborating evidence certainly enhances the reliability of the prior testimony of an unavailable witness, it is not a requisite to its admission.

Although cross-examination during the preliminary examination is formally limited to the issue of probable

[11] There is some question as to whether the mere opportunity to cross-examine satisfies the confrontation clause. In *Ohio v. Roberts*, 448 U.S. at 70, the Supreme Court declined to determine whether the opportunity to cross-examine at the preliminary hearing—even absent actual cross-examination—meets the requirements of the confrontation right. We believe that an adequate opportunity to cross-examine is enough to satisfy the confrontation clause when cross-examination is strategically declined. In *Nabbefeld v. State*, 83 Wis. 2d at 526, we held:

"It would be contrary to the interests of justice to prohibit the use of the preliminary-hearing testimony of an unavailable witness when the circumstances reveal that cross-examination was declined as a matter of strategy to protect the interests of the defendant."

We also recognize, however, that the mere opportunity to cross-examine may not satisfy the confrontation clause in certain situations—for example, where counsel was incompetent or confronted with a conflict of interest. *Id.* at 525.

[12] Nearly all of the cases which found corroborating evidence to be an important factor had progressed through the trial stage. Because there has not yet been a trial in the instant case, we cannot be certain as to the existence or nonexistence of corroborating evidence. Even if there is no corroborating evidence, however, Bauer's ability to attack Rastall's credibility is not limited to what defense counsel was able to show on cross-examination during the preliminary examination. Bauer may introduce other evidence to discredit Rastall, such as inconsistent prior statements or, under certain circumstances, opinion and reputation evidence of Rastall's character.

cause (plausibility), the witness's credibility often becomes a subject of inquiry. These issues overlap, allowing defense counsel to reach credibility while cross-examining as to plausibility. For example, inconsistencies in a witness's story which have been drawn out during cross-examination at the preliminary examination are not only relevant to plausibility but also work to discredit the witness. Consequently, it cannot be said that defense counsel was precluded from testing Rastall's credibility.

In *Ohio v. Roberts,* 448 U.S. at 71, the Supreme Court indicated that it is the substance of the questioning rather than its formal characterization which is important. In *Roberts* the unavailable witness was not formally cross-examined at the preliminary hearing. The testimony the state sought to admit came out on defense counsel's direct examination. Nevertheless, the Court held that the testimony satisfied the defendant's confrontation right because defense counsel used leading questions which comported with the principal purpose of cross-examination: "to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.' " *Id.* at 71 [quoting Davenport, *The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis,* 85 Harv. L. Rev. 1378 (1972)].

This analysis in *Roberts* can be analogously applied to the instant case. Notwithstanding the fact that cross-examination during the preliminary examination is limited in form, if in substance the questioning deals with the witness's credibility, the purposes behind the confrontation right may be satisfied.

We find that defense counsel was permitted to sufficiently probe Rastall's credibility. Defense counsel conducted a lengthy cross-examination in which he questioned Rastall about nearly every move either she or her assailant made during the incident. We are convinced that defense counsel did in fact make an effort to discredit Rastall by exposing inconsistencies in her story. Moreover, the court did not restrict defense counsel's questioning. The state objected only once, and that objection was overruled.

We conclude that in substance defense counsel adequately cross-examined Rastall "on the very issues that are relevant at the time the witness is unavailable," including credibility. *Nabbefeld v. State*, 83 Wis. 2d at 522. Therefore, the cross-examination was sufficient to establish reliability and afford the trier of fact a reasonable basis for evaluating the trustworthiness of Rastall's testimony. We hold that the confrontation clause has been satisfied and, accordingly, affirm that portion of the court of appeals' decision which held that Rastall's preliminary examination testimony is properly admissible.

### III

We must next consider the propriety of admitting Rastall's extrajudicial statements into evidence. The trial court granted Bauer's motion to suppress these statements. In its decision the trial court held that the confrontation clause is satisfied only when the extrajudicial statements are taken from prior recorded testimony subject to cross-examination or dying declarations. Since Rastall's extrajudicial statements did not fall within either of these categories, the trial court reasoned that their admission would violate the confrontation clause.

The court of appeals affirmed this portion of the trial court's decision.

The trial court's decision on this issue is defective in two respects. First, the premise that extrajudicial statements satisfy the confrontation clause only when taken from prior testimony subject to cross-examination or dying declarations is incorrect. We have held to the contrary on several occasions. In *State v. Olson, supra,* and *Hagenkord v. State, supra,* we held that the admission into evidence of certain hospital records absent an available witness did not violate the confrontation clause. In *State v. Dorcey, supra,* we held that the trial court properly admitted the prior statement of an unavailable co-conspirator.

The second error committed by the trial court was its failure to apply a proper confrontation clause analysis in determining the admissibility of Rastall's extrajudicial statements. The decision indicates that the trial court did not require Bauer to identify the statements he sought to suppress. Consequently, the statements were excluded by the trial court without proper consideration. The trial court should have evaluated each statement in light of relevant case law to determine whether it could be admitted into evidence without offending the confrontation clause. Since the trial court failed to analyze properly Rastall's extrajudicial statements, we reverse that portion of the court of appeals' decision which affirmed the exclusion of such statements and remand the matter to the trial court for further consideration in accordance with the confrontation clause standard set forth in this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and cause remanded for proceedings consistent with this opinion.