STATE of Wisconsin, Plaintiff-Appellant,

v.

Daniel J. BAUER, Defendant-Respondent.†

Court of Appeals

No. 84–1340–CR. *Submitted on briefs January 14, 1985.—Decided March 12, 1985.*

(Also reported in 368 N.W.2d 59.)

† Petition to review granted.

446

For the appellant there were briefs by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

For the respondent there was a brief by *Nila Jean Robinson* and *Robinson, Smith & Robinson* of Appleton.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J.   The state appeals an order suppressing the identification of Daniel J. Bauer as the perpetrator of a sexual assault. The victim of the assault identified Bauer at the preliminary hearing. The in-court identification followed prior identifications from a photo array and a physical lineup. After the victim died in an automobile accident, the defendant sought to suppress the in-court identification because the state could not produce

the photo array or a photograph of the lineup. The trial court concluded that the lost photographs were material evidence and that due process prohibits the state from using an identification based on lost evidence.

The state contends that the trial court erred by presuming that the lost photographs were exculpatory. Alternatively, the state contends that the in-court identification should be admitted because it had a basis independent of the out-of-court identifications. Because the lost photographs were material to establishing the reliability of the in-court identification and were possibly exculpatory, and because no independent basis exists to verify the reliability of any of the identifications, we affirm the suppression order.

The victim of the assault first identified Bauer from an array of six photographs. The police then arrested Bauer, and he requested a physical lineup to test the victim's prior identification. Bauer's attorney attended the lineup at which the victim again identified the defendant. Finally, the victim identified Bauer at the preliminary hearing.

The victim died in an automobile accident shortly after the preliminary hearing. Bauer's new attorney[1] then moved to suppress all identification evidence, including the victim's testimony at the preliminary. The trial court suppressed the preliminary testimony, but did not rule on the identification evidence. The state appealed the court's suppression order, and this court reversed the exclusion of the preliminary testimony. Our supreme court affirmed our decision to admit the preliminary testimony. *State v. Bauer*, 109 Wis. 2d 204, 325 N.W.2d 857 (1982).

Bauer renewed his motion to exclude all identification evidence after this matter was remanded to the trial court. The trial court excluded the victim's out-of-court identification testimony as unreliable hearsay. The state

---

[1] Bauer changed attorneys after the preliminary hearing.

did not appeal this ruling. Bauer also argued that the identification at the preliminary should be suppressed because the prior out-of-court identifications were suppressed and because the state lost the photo array and the photograph of the lineup. He contended that the admissibility of the in-court identification depends on the reliability of the out-of-court identifications, which cannot be determined without the lost evidence. The trial court ruled that the lost evidence was material and that due process required the suppression of the identification made at the preliminary.

## DUTY TO PRESERVE EVIDENCE

This case raises the problem of evidence lost by the state that may or may not be favorable to the defendant. The photographs in a pictorial lineup and the photograph of a physical lineup may constitute exculpatory evidence if they indicate that the identification procedure was unnecessarily suggestive. The exculpatory value of such evidence cannot be determined, however, when the evidence is lost or destroyed. This case therefore differs from those recently decided by our supreme court involving lost evidence that was not material or exculpatory under any circumstances. *See State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984) ; *State v. Disch,* 119 Wis. 2d 461, 351 N.W.2d 492 (1984) ; *State v. Ehlen,* 119 Wis. 2d 451, 351 N.W.2d 503 (1984).

The parties express justifiable confusion about the correct test for determining whether the loss or destruction of evidence constitutes a violation of due process. After reviewing decisions by this court, our supreme court, and the United States Supreme Court, it appears that a variety of tests have been applied to evaluate the effect of lost evidence. The state urges a test requiring Bauer to show that lost evidence would have been both material

and exculpatory. Bauer argues that he must only show that the lost evidence would have been material. We conclude that the state has an obligation to preserve material evidence that may possibly be exculpatory. The loss or destruction of such evidence does not necessarily require a sanction, however, unless fundamental fairness is denied.

According to the United States Supreme Court, due process is violated by the loss of evidence that prevents a fair trial. *United States v. Valenzuela-Bernal,* 458 U.S. 858, ——, 102 S. Ct. 3440, 3449 (1982). Absence of fairness is not established unless the defendant explains how the lost evidence would have been favorable and material. *See id.* Sanctions may be imposed because of the loss of material evidence only if there is a reasonable likelihood that the evidence could have affected the judgment of the trier of fact. *See id.* at 3450.

In *California v. Trombetta,* —— U.S. ——, ——, 104 S. Ct. 2528, 2533 (1984), the Supreme Court specifically addressed the government's duty to take affirmative steps to preserve evidence for criminal defendants. The court stated that the Constitution requires the preservation of evidence that might be expected to play a significant role in the suspect's defense. *Id.* at 2534. To meet the standard of constitutional materiality, evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.*

Wisconsin appellate courts have not always required a showing that lost evidence would have been favorable to the defendant. In *State v. Amundson,* 69 Wis. 2d 554, 577, 230 N.W.2d 775, 787–88 (1975), our supreme court distinguished between the suppression of evidence and the destruction of evidence. The court required a showing that suppressed evidence is exculpatory because the

evidence is available for inspection by the court. *Id.* at 577, 230 N.W.2d at 787. The court held that destroyed evidence need only be material because the defendant could not possibly prove that the destroyed evidence was exculpatory. *Id.* at 578, 230 N.W.2d at 788. Relying on *Amundson,* this court subsequently held that the destruction of breath ampoules before the defendant could test them violated due process. We stated that the defendant could not otherwise effectively challenge the reliability of the state's evidence. *State v. Booth,* 98 Wis. 2d 20, 28, 295 N.W.2d 194, 198–99 (Ct. App. 1980).

The parties disagree as to whether our supreme court recently changed the requirements for proving a due process violation in destruction of evidence cases. *Walstad,* 119 Wis. 2d at 522, 351 N.W.2d at 488, overruled our decision in *Booth* on the basis that used ampoules are not retestable, and therefore they are not material evidence. The results of a blood alcohol test were admitted in *Disch,* 119 Wis. 2d at 470, 351 N.W.2d at 497, where the defendant did not show that the lost blood sample could be retested. *See also Ehlen,* 119 Wis. 2d at 457, 351 N.W.2d at 506. Bauer argues that these cases reaffirm the underlying principle that the loss of material evidence violates due process regardless of whether the defendant can prove that the evidence was exculpatory. The supreme court did state in *Disch,* 119 Wis. 2d at 477, 351 N.W.2d at 500, that a defendant is denied fundamental fairness when evidence material to guilt or innocence is unavailable. The state contends, however, that the loss of evidence does not necessarily violate due process unless fundamental fairness is compromised so that a fair trial is impossible. *See Disch,* 119 Wis. 2d at 469–70, 351 N.W.2d at 496–97.

The confusion of the parties is caused by the failure to distinguish between two separate inquiries that are both necessary to evaluate destruction of evidence cases. The

first issue is whether the state had a duty to preserve the lost evidence for inspection by the defendant. The second issue is whether the loss of evidence that should have been preserved requires the imposition of a sanction. The fact that evidence should be preserved triggers the second inquiry about sanctions; sanctions, however, are not automatically required.

We conclude that the state has a duty to preserve material evidence that is possibly exculpatory. The defendant must make a plausible showing of how the lost evidence would have been material and favorable. We recognize that a defendant may be able to establish that lost evidence was possibly exculpatory, while the state discarded the evidence because it was not apparently exculpatory. We reconcile the defendant's need for a relaxed showing of exculpability and the state's right to discard nonexculpatory evidence by placing the burden on the state to show that the unavailable evidence was not favorable to the defendant. The state must show that the evidence was not exculpatory by clear and convincing evidence.[2] Where the state did not determine whether evidence was exculpatory before the evidence was lost or discarded, the state cannot rebut the defendant's showing that the evidence was possibly exculpatory;[3] the lost evidence is then presumed to be excul-

---

[2] *See State v. Brown*, 50 Wis. 2d 565, 572, 185 N.W.2d 323, 327 (1971) (the state must prove an independent basis for a tainted identification by clear and convincing evidence).

[3] A typical application of this rule involves evidence that is material to evaluating the reliability of scientific test results. We implicitly applied this rule in *State v. Booth*, 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980), but our supreme court overruled our conclusion that breathalyzer ampoules are material evidence. *State v. Walstad*, 119 Wis. 2d 483, 522, 351 N.W.2d 469, 488 (1984). When evidence can be used to check the accuracy of scientific test results, however, then the state has a duty to preserve such evidence.

patory, and sanctions may be imposed in appropriate cases. When the exculpatory value depends upon subjective assessments, the state also has a duty to preserve the evidence.

## SANCTIONS FOR LOSS OR DESTRUCTION OF EVIDENCE

Sanctions are not required when the state loses evidence unless necessary to assure fundamental fairness. This principle was recognized in *Amundson*, 69 Wis. 2d at 579–80, 230 N.W.2d at 789, when our supreme court identified several factors that influence whether the destruction of evidence vitiates a conviction. The factors included the degree of negligence or bad faith by the government, the importance of the evidence lost, and the strength of the other evidence of guilt adduced at trial. In *Disch*, 119 Wis. 2d at 469, 351 N.W.2d at 496, the supreme court also stated that an omission or failure by the state that does not compromise fundamental fairness does not require the reversal of a conviction.

When evidence affecting the credibility of a witness is lost, fundamental fairness does not require suppression of the witness's testimony if reliability can otherwise be assured. The state has an obligation to preserve evidence that affects the credibility of a witness. *Tucker v. State*, 84 Wis. 2d 630, 641, 267 N.W.2d 630, 636 (1978). The loss of such evidence is analogous to the loss of evidence affecting the reliability of scientific test results. In *Disch*, 119 Wis. 2d at 471, 351 N.W.2d at 497, our supreme court stated that the loss of a blood sample capable of being retested does not deny a defendant a fair trial because other measures of reliability exist to verify the state's test results. *See also Walstad*, 119 Wis. 2d

at 524, 351 N.W.2d at 489. Scientific test results also are presumed to be reliable when the legislature has authorized the test method. *Disch,* 119 Wis. 2d at 475, 351 N.W.2d at 499. The *sine qua non* of admissibility, therefore, when evidence affecting credibility is lost is whether the affected evidence is otherwise shown to be reliable.[4]

## DUTY TO PRESERVE IDENTIFICATION EVIDENCE

The above rules are applicable to determine whether an identification should be suppressed because the state lost a photo array shown to a witness and the photograph of a physical lineup. Our first inquiry considers whether the state had a duty to preserve the lost photographs. Second, we consider whether the identification was shown to be reliable despite the loss of the photographs.

A photo array shown to a crime victim to determine the identity of the criminal is material evidence. The admissibility of an in-court identification is affected by an out-of-court identification that was impermissibly suggestive unless the in-court identification has an independent basis. *Powell v. State,* 86 Wis. 2d 51, 65–66, 271 N.W.2d 610, 617 (1978). Because the photographs in the array might serve to unduly emphasize the photograph of the suspect, *id.* at 62–63, 271 N.W.2d at 616, the photographs are relevant to determine whether the out-of-court identification was suggestive. Proof of identity is

---

[4] Suppression of evidence may be appropriate, however, if the state flouts a discovery order, *State v. Disch,* 119 Wis. 2d 461, 478, 351 N.W.2d 492, 501 (1984), or if it destroys evidence in bad faith. *State v. Amundson,* 69 Wis. 2d 554, 579–80, 230 N.W.2d 775, 789 (1975).

critical to support a conviction. A photo array therefore is material to guilt or innocence because it affects the admissibility of the identification of the defendant.

We apply the "might possibly be exculpatory" test to determine the state's duty to preserve a photo array. The defendant cannot absolutely prove that the photographs were exculpatory because they are not available for inspection. As a general rule, however, such photographs might possibly be exculpatory. The possibility that the photographs might be favorable satisfies the requirement of exculpability without any particularized showing by the defendant that the photographs in his case were suggestive.

The state cannot rebut the possibility that the photographs were suggestive because such a determination is highly subjective. While the police would not in good faith employ a suggestive array, unreliable identification procedures may unintentionally be used. Because such inadvertence is not likely to be detected by the police, they cannot discard a photo array in reliance on their own determination that the photographs are nonexculpatory. We therefore hold that the state had a duty to preserve the photo array from which the victim first identified Bauer.[5]

---

[5] The duty to preserve a photo array arises when a known suspect exists at the time the photographs are presented to the witness. If the suspect is included in the array and the witness either identifies him, fails to make any identification, or identifies someone else, then evidence of the identification procedure, including the photographs, should be preserved. In all instances, evidence of a positive identification from a photo array should be preserved. Only a limited duty to preserve arises, however, after an identification made from a compilation of photographs that includes all suspects wanted by the police. In such a case, the police only have to preserve photographs actually identified.

The state did not have a duty to preserve a photograph of the physical lineup because Bauer's attorney was present at the lineup. The presence of counsel is required at a post-indictment pretrial lineup. *See Holmes v. State,* 59 Wis. 2d 488, 499–500, 208 N.W.2d 815, 821 (1973). The duty to preserve exculpatory evidence extends to material that is within the exclusive possession of the state. *State v. Sarinske,* 91 Wis. 2d 14, 36, 280 N.W.2d 725, 735 (1979). Exclusive control does not exist when the defense has access to the evidence. *See id.* Here, Bauer's attorney was in the best position to tentatively determine whether the lineup was suggestive. If the lineup was questionable, then the defendant could have had a photograph made of it. The state's photograph of the lineup therefore was not material and favorable evidence to which Bauer was denied access. As a result, Bauer had the burden of positively demonstrating that the lineup was suggestive. *State v. Armstrong,* 110 Wis. 2d 555, 571, 329 N.W.2d 386, 394 (1983). He did not satisfy that burden.

## SANCTIONS FOR LOSS OF IDENTIFICATION EVIDENCE

We must next determine whether the reliability of the identification from the photo array can be established without the photographs themselves. The reliability of the identification ultimately determines its admissibility. *See Manson v. Brathwaite,* 432 U.S. 98, 113–14 (1977).

---

*See State v. Harris,* 301 S.E.2d 91, 95 (N.C. 1983) (court refused to presume suggestive identification when the mug book shown to the witness was disassembled in good faith); *Commonwealth v. Brown,* 380 N.E.2d 113, 117 (Mass. 1978) (court stated that the impracticality of retaining thick books of photographs examined by a witness outweighed possible evidentiary value).

In deciding whether the identification is reliable, we must first determine what evidence to consider when making this evaluation.

Two approaches to the problem are possible. First, we might presume that the out-of-court identification was suggestive and limit our inquiry to whether an independent basis exists for the identification. *See Branch v. Estelle,* 631 F.2d 1229, 1234–35 (5th Cir. 1980); *United States v. Sanchez,* 603 F.2d 381, 384–86 (2nd Cir. 1979). Second, we might permit the state an opportunity to establish the reliability of the identification procedure with testimony from the involved police officers and witnesses, as well as permitting evidence of an independent basis for the identification. *See State v. Lewis,* 637 S.W.2d 421, 423 (Mo. App. 1982); *People v. Huffman,* 401 N.E.2d 1211, 1216 (Ill. App. 1980).

The *Sanchez* decision provides the most compelling argument against allowing the state an opportunity to prove the reliability of a photo identification without the photographs themselves. In that case, the police officers involved in the identification could not accurately recall the descriptions of persons in a photo array. The court stated that police officers cannot be expected to recall in sufficient detail photographs whose major importance is that they are not photographs of the suspect. *Sanchez,* 603 F.2d at 385. The court concluded that the only reliable way to determine whether a photo array was suggestive is to see the actual photographs. *Id.*

We adopt the *Sanchez* rationale against permitting the state to prove the reliability of a photo identification with oral testimony. The risk of unreliable memories outweighs the remote possibility that officers or witnesses will accurately recall the details of lost photographs. Our conclusion also is mandated by sec. 910.02, Stats., which provides that the original of a photograph

is required to prove its content. Because the reliability of testimony recalling the contents of photographs is questionable, no exception to sec. 910.02 exists in this case. Additionally, neither party made any showing at the suppression hearing that the police have any recollection of the photograph identification procedure in this case.

The state may show, however, that an identification has a basis independent of a photo array. *See State v. Mosley*, 102 Wis. 2d 636, 652, 307 N.W.2d 200, 210 (1981). The factors to consider under this analysis are: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 654–55, 307 N.W.2d at 211. Satisfaction of this standard assures the reliability of an identification for purposes of due process.

Applying the above test to this case, we conclude that no independent basis exists for the identification of Bauer. The preliminary hearing testimony is the only available evidence of the victim's ability to view her attacker. We may consider this evidence to determine whether the identfication has an independent basis because this preliminary hearing testimony is reliable enough to be admissible in a criminal trial. *Bauer*, 109 Wis. 2d at 222, 325 N.W.2d at 866. Nonetheless, the victim's preliminary testimony by itself is not clear and convincing that her identification of Bauer was independent of the photographic identification.

The victim testified at the preliminary examination that the attacker wore a ski mask concealing his identity. The victim allegedly did view the attacker for a

brief time without the mask. Although a very brief view may provide an independent basis for identification in some circumstances, *see Zdiarstek v. State,* 53 Wis. 2d 420, 427, 192 N.W.2d 833, 427 (1972), the victim's testimony in this case was too uncertain. She stated that the attacker may have had a mustache and beard based on the fit of the ski mask. If she had an unobscured view of the attacker, however, then the existence of facial hair should have been certain. Because no independent basis exists for the identification, therefore, we affirm the suppression of the identification at the preliminary hearing.

*By the Court.*—Order affirmed.